UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MCCARD,<br><br>Plaintiff,<br><br>v.<br><br>CIRCOR INTERNATIONAL, INC., a Delaware corporation; DELTAVALVE LLC, a Delaware limited liability company; and DOES 1–50, inclusive,<br><br>Defendants. | No. 2:20-cv-00147-TLN-AC<br><br>**ORDER** |

This matter is before the Court on Defendants CIRCOR International, Inc. ("CIRCOR") and DELTAVALVE LLC's ("DELTAVALVE") (collectively, "Defendants") Motion to Dismiss under Federal Rules of Civil Procedure ("Rule" or "Rules") 12(b)(2) and 12(b)(6). (ECF No. 19.) Plaintiff Robert McCard ("Plaintiff") filed an opposition. (ECF No. 20.) Defendants filed a reply. (ECF No. 22.) For the reasons discussed herein, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.

///
///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 24, 2018, Plaintiff responded to an internet job posting regarding an open position based in Utah with DELTAVALVE. (ECF No. 18 at 2–4.) Knowing Plaintiff worked for a California-based company at the time, Defendants conducted four interviews with Plaintiff while he resided in California. (*Id.* at 3.) Plaintiff does not allege the specific location of the interviews or Defendants during the interview process, nor does he allege the manner in which the interviews were conducted. (*See id.* at 3–5.) Defendants hired Plaintiff on or about November 5, 2018. (*Id.* at 2.) Plaintiff alleges Defendants induced him to move from California to Utah with false representations about the character, kind, existence, and length of his employment with Defendants. (*Id.* at 3–4.)

Specifically, Plaintiff alleges Kathy Olson ("Olson") and Ruben Lah ("Lah") described the position as a full-time offer of employment with permanent relocation to Utah during the interview process. (*Id.* at 3.) Olson is the Senior Human Resources Manager for CIRCOR. (*Id.* at 4.) Lah is the Group Vice President and General Manager for CIRCOR. (*Id.*) Olson and Lah stated they wanted Plaintiff to move into a director's position with Defendants to develop a construction group. (*Id.* at 3.) When Plaintiff explained he planned to work for another 10 to 13 years until the age of 72, Lah stated he wanted Plaintiff to work for Defendants until Plaintiff retired. (*Id.*) Additionally, Plaintiff informed Defendants his wife suffered from multiple sclerosis and required frequent medical appointments and travel to California. (*Id.*) Plaintiff was told this would not be a problem and he could travel with her as he needed. (*Id.*)

Plaintiff alleges another company offered him a job with a higher salary and Plaintiff was also in final interviews with California-based companies. (*Id.*) Despite these other opportunities, Plaintiff informed Defendants he would accept their job offer. (*Id.*) Defendants sent a job offer letter to Plaintiff in California for the position of "Senior Principle [sic] Project Manager" for DELTAVALVE. (*Id.* at 4.) Plaintiff received relocation benefits and was aware if he left his employment within two years, he would have to pay back certain benefits. (*Id.*)

On May 17, 2019, seven months after Plaintiff moved to Utah and started work, Plaintiff was told his employment was terminated "due to lack of progress on previously discussed

1  ongoing challenges," despite no prior performance discussions or discipline.  (*Id.*)  Plaintiff had
2  been performing his job duties in an efficient, competent, and successful manner.  (*Id.*)  After his
3  termination, Plaintiff returned to California and continues to reside there.  (*Id.* at 5.)

4      Plaintiff alleges he was not provided long-term employment, permanent relocation from
5  his home in California to Utah, a promotion to a director's position with Defendants, or the ability
6  to travel with his wife to California for her medical appointments without issue.  (*Id.*)  Plaintiff
7  further alleges at the time the statements were made, Defendants knew Plaintiff would not be
8  employed until his retirement or allowed to travel to California for all of his wife's medical
9  appointments without issue.  (*Id.*)

10      Plaintiff alleges he suffered harm by: (1) leaving his salary and benefits from his previous
11  employer; (2) leaving the property in California he had owned since 2006 and where he intended
12  to remain; (3) declining job offers from California-based companies that Olson and Lah were
13  aware of as part of the interview process; (4) having difficulties finding alternative permanent
14  full-time employment in California following his termination; and (5) incurring relocation
15  expenses in returning to California.  (*Id.*)

16      On November 6, 2019, Plaintiff initiated this action in El Dorado County Superior Court.
17  (ECF No. 1-1 at 5.)  On January 21, 2020, CIRCOR removed the case to this Court.  (ECF No. 1.)
18  On February 18, 2020, Plaintiff filed the First Amended Complaint ("FAC").  (ECF No. 8.)  On
19  March 3, 2020, Defendants filed a motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6).
20  (ECF No. 10.)  The motion was granted with leave to amend.  (ECF No. 17.)  Plaintiff
21  subsequently filed the Second Amended Complaint ("SAC") on April 19, 2021.  (ECF No. 18.)
22  The operative SAC asserts a single cause of action against Defendants for violation of California
23  Labor Code § 970 ("§ 970").  (*Id.*)  On May 3, 2021, Defendants filed the instant motion to
24  dismiss pursuant to Rules 12(b)(2) and 12(b)(6).  (ECF No. 19.)  On May 27, 2021, Plaintiff filed
25  an opposition.  (ECF No. 20.)  On June 3, 2021, Defendants filed a reply.  (ECF No. 22.)
26  ///
27  ///
28  ///

**II.     STANDARD OF LAW**

      A.     <u>Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)</u>

Rule 12(b)(2) allows a party to file a motion to dismiss for lack of personal jurisdiction. When there is no federal statute authorizing personal jurisdiction, the district court applies the law of the state in which the district court sits. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). California's long-arm statute is coextensive with federal due process requirements. Cal. Civ. Proc. Code § 410.10. Accordingly, the "jurisdictional analyses under state law and federal due process are the same." *Mavrix Photo*, 647 F.3d at 1223 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (2004)).

The traditional bases for exercising personal jurisdiction are: (1) service of process in the forum state; (2) domicile within the forum state at the time the action is commenced; or (3) consent to jurisdiction in the forum state. *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). However, "[f]or a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Under the minimum contacts test, there are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014).

A court may assert general personal jurisdiction over corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). There are two "paradigm all-purpose forums" in which a corporation will primarily be "at home" for the purposes of general jurisdiction: its place of incorporation and its principal place of business. *Daimler*, 571 U.S. at 137. General jurisdiction is not limited to these two forums, but it will only be available elsewhere in the "exceptional case" a corporation's affiliations with a forum are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19; *see also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) ("Only

in an 'exceptional case' will general jurisdiction be available anywhere else."). Indeed, under the modern jurisdiction theory, general jurisdiction "has played a reduced role," and "[the Supreme Court's] post-*International Shoe* opinions on general jurisdiction . . . are few." *Daimler*, 571 U.S. at 128–29.

Specific jurisdiction, on the other hand, is satisfied when the defendant's activities are directed toward the forum state and the defendant's liability arises out of or relates to those activities. *Id.* at 127. In the Ninth Circuit, courts employ a three-part test to determine whether a defendant's contacts suffice to establish specific jurisdiction: "(1) the nonresident defendant must have purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; (2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable." *Roth v. Garcia Marquez*, 942 F.2d 617, 620–21 (9th Cir. 1991) (emphasis omitted). The plaintiff bears the burden of satisfying the first two prongs, and if they are met, the burden shifts to the defendant "to set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Mavrix Photo*, 647 F.3d at 1227–28 (internal quotations and citation omitted).

In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. *Wash. Shoe Co. v. A–Z Sporting Goods Inc.*, 704 F.3d 668, 671–72 (9th Cir. 2012). However, when the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a "prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). The court resolves all disputed facts in favor of the plaintiff. *Id.* at 672.

B.     Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in federal court, the complaint must "give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss" for failure to state a claim. *Adams v. Johnson*, 355, F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true allegations that contradict matters properly subject to judicial notice).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

**III.  ANALYSIS**

    A.  <u>Motion to Dismiss for Lack of Personal Jurisdiction</u>

Defendants seek dismissal due to lack of personal jurisdiction under Rule 12(b)(2). (ECF No. 19 at 2.) Defendants argue no traditional bases for personal jurisdiction exist and they lack sufficient minimum contacts with California. (ECF No. 19-1 at 1.)

///

1    Plaintiff "concedes that traditional bases for personal jurisdiction cannot be established
2 over CIRCOR." (ECF No. 20 at 11.) However, Plaintiff argues CIRCOR has sufficient
3 minimum contacts with California for specific personal jurisdiction to be applicable. (*Id.*)
4 Therefore, the Court will only address whether it may exercise specific personal jurisdiction over
5 CIRCOR.

6    As a preliminary matter, while Plaintiff asserts the Court has personal jurisdiction over
7 CIRCOR, he does not argue the same regarding DELTAVALVE. (*See id.* at 18.) Plaintiff has
8 conceded the exercise of personal jurisdiction over DELTAVALVE, and therefore, the Court
9 declines to exercise specific personal jurisdiction over DELTAVALVE. Accordingly,
10 Defendants' motion to dismiss DELTAVALVE for lack of personal jurisdiction is GRANTED
11 with leave to amend.

12    As previously discussed, the Ninth Circuit employs a three-part test to determine specific
13 personal jurisdiction, for which Plaintiff bears the burden of establishing the first two prongs:
14 purposeful availment/direction[1] and forum-related activities. *See Mavrix Photo*, 647 F.3d at
15 1227–28. Defendants do not make any arguments regarding the forum-related activities prong of
16 the specific personal jurisdiction test. (*See* ECF Nos. 19-1, 22.) Therefore, the Court need not
17 and does not address that prong.

18               *i.    Purposeful Direction*

19    Regarding the purposeful direction prong, the *Calder* "effects" test is used when a case
20 involves a tort allegedly committed by an out-of-state defendant outside the forum state to
21 determine whether the defendant purposefully directed its conduct at the forum state. *See*
22 *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603–04 (9th Cir. 2018)
23 (citing *Calder v. Jones*, 465 U.S. 783, 791 (1984)). Under the *Calder* test, a plaintiff must allege
24 a defendant: "(1) committed an intentional act[;] (2) expressly aimed at the forum state[;] (3)
25 causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co.*

---

[1] Where a plaintiff's claim sounds in tort, as with a § 970 claim, the Ninth Circuit uses the "purposeful direction" version of the "purposeful availment" test. *Kabbara v. Design Sols. & Integration, Inc.*, No. 8:20-cv-01207-JLS-DFM, 2020 WL 12707985, at *4 (C.D. Cal. Dec. 28, 2020) (citing *Picot v Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015)).

*v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

Defendants argue CIRCOR's alleged actions did not constitute an intentional act sufficient to establish purposeful direction under the *Calder* test because: (1) CIRCOR did not know the representations made were false at the time they were made; and (2) the alleged harm was not known to be likely to be suffered in California at the time of the allegedly wrongful conduct. (ECF No. 19-1 at 15; ECF No. 22 at 4.)  In opposition, Plaintiff argues the elements of the *Calder* test are met because: (1) the pre-employment misrepresentations are intentional acts; (2) the act was expressly aimed at California; and (3) Plaintiff suffered harm in California.  (ECF No. 20 at 13–15.)  In its March 31, 2021 Order, the Court agreed with Plaintiff regarding whether Defendants' acts were aimed at California.  (ECF No. 17 at 11.)  Additionally, Defendants only argue Plaintiff has not established the first and third elements of the *Calder* test.  (ECF No. 22 at 3–4.)  The Court will thus only address the first and third elements of the *Calder* test — whether there was an intentional act and whether Plaintiff suffered harm CIRCOR knew was likely to be suffered in California.

          a.  <u>Intentional Act</u>

"'[I]ntent' in the context of the 'intentional act' test [refers] to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act."  *Schwarzenegger*, 374 F.3d at 806.  Thus, under *Calder*, pre-employment communications from a defendant to a plaintiff are intentional acts.  *See Kabbara*, 2020 WL 12707985, at *4 ("[T]here can be no question that [defendant] acted intentionally when it called [plaintiff], and the first [element] of the *Calder* test is therefore easily satisfied.").

In its prior Order, the Court pointed to two main issues regarding specific personal jurisdiction.  (ECF No. 17 at 10.)  For the first issue, the Court refused to infer Olson and Lah were employed by CIRCOR.  (*Id.* at 10–11.)  Since the Court would not make this inference, Plaintiff failed to demonstrate CIRCOR acted intentionally.  (*Id.*)  The SAC alleges Olson is the Senior Human Resources Manager for CIRCOR, and Lah is the Group Vice President and General Manager for CIRCOR.  (ECF No. 18 at 4.)  Thus, the first issue has been rectified.

///

9

For the second issue, the Court's prior Order found Plaintiff's allegations of wrongdoing insufficient to establish an intentional act. (ECF No. 17 at 10.) The SAC alleges CIRCOR knew Plaintiff was a California resident and CIRCOR went through with four interviews with him, including speaking with Olson and Lah. (ECF No. 18 at 3.) Plaintiff therefore alleges CIRCOR communicated through Lah and Olson with him, and therefore, CIRCOR committed an intentional act.[2] *See Schwarzenegger*, 374 F.3d at 806 (placing a newspaper advertisement was an intentional act); *Kabbara*, 2020 WL 12707985, at *4. Therefore, the first element of the *Calder* test has been satisfied.

b. Harm in the Forum State

"The final element of the Calder 'effects' test is satisfied if [the plaintiff] can show that 'a jurisdictionally sufficient amount of harm is suffered in the forum state.'" *Davis v. NIH Fed. Credit Union*, No. 12-cv-05502-JCS, 2013 WL 2147468, at *7 (N.D. Cal. May 15, 2013) (quoting *Yahoo!*, 433 F.3d at 1207).

Plaintiff alleges he: (1) suffered harm from leaving the salary and benefits of his previous employer; (2) left the California property where he had intended to remain; (3) declined employment offers from other California-based companies; (4) has had difficulty finding alternative permanent full-time employment in California following his termination; and (6) incurred relocation expenses for his return to California. (ECF No. 18 at 5); *see Davis*, 2013 WL 2147468, at *7 (finding the plaintiff suffered harm in the forum state because she alleged: (1) she left her job in California that paid $130,000 plus benefits; (2) she intended to work in California for the rest of her career and was not looking for other jobs when she was recruited; (3) she left significant community ties in California; and (4) after moving back to California, she was unable

---

[2] In the portion of the Court's March 31, 2021 Order addressing the intentional act element, the Court noted Plaintiff's allegations were insufficient to show CIRCOR's representations were false. (ECF No. 17 at 10.) The Court's subsequent research shows an intentional act only requires the intent to perform an act, and not the intent to achieve a result of the act. *See Schwarzenegger*, 374 F.3d at 806. Therefore, the intentional act requirement does not require CIRCOR's representations to be false. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc) (a personal jurisdiction case requires evaluation of all the defendant's contacts with the forum state, whether or not those contacts involve wrongful conduct by the defendant).

10

1  to find alternative employment and continued to suffer emotional distress from being
2  unemployed); *Kabbara*, 2020 WL 12707985, at *5.
3        Additionally, because CIRCOR knew Plaintiff resided in and was employed in California,
4  (ECF No. 18 at 3), "[CIRCOR] was on notice that harms flowing from its conduct would likely
5  be felt [in California]." *Kabbara*, 2020 WL 12707985, at *5.  Considering Plaintiff's new factual
6  assertions in the SAC, the Court finds Plaintiff alleges sufficient facts to establish the final
7  element of the *Calder* test.
8        All elements of the *Calder* test are satisfied and thus Plaintiff satisfies his burden with
9  respect to the purposeful direction prong of the specific personal jurisdiction test.  *See Mavrix*
10  *Photo*, 647 F.3d at 1227–28.
11        *ii.*    *Reasonableness of the Exercise of Jurisdiction*
12        The third prong of the specific personal jurisdiction test is that exercise of jurisdiction
13  must be reasonable.  *Id.*  The burden is on the defendant "to set forth a 'compelling case' that the
14  exercise of jurisdiction would not be reasonable."  *Id.* at 1228 (quoting *Burger King Corp. v.*
15  *Rudzewicz*, 471 U.S. 462, 476–78 (1985)).
16        Defendants argue exercising jurisdiction over CIRCOR would be unreasonable.  (ECF No.
17  19-1 at 16–17.)  Specifically, Defendants argue: (1) CIRCOR has not purposefully injected itself
18  into California; (2) the burden on CIRCOR litigating in California would be substantial because it
19  is domiciled in another state and pertinent witnesses and documents are in Utah and
20  Massachusetts; (3) California has no interest in the dispute as the alleged conduct did not occur in
21  California; (4) Utah would be the most efficient forum as Plaintiff's employment was in Utah and
22  relevant records and witnesses are there as well; and (5) Utah is a more convenient forum.  (*Id.*)
23        In turn, Plaintiff argues: (1) CIRCOR purposefully directed its conduct to California; (2)
24  although there are some inconveniences for CIRCOR to litigate in California, the factor is not
25  dispositive; (3) there is no indication of any conflict with Utah's sovereignty; (4) § 970
26  demonstrates California's interest in the dispute; (5) as the case has already been filed in
27  California it is the most efficient forum; (6) the convenience of this forum is important to Plaintiff
28  given that he resides in California and his wife still requires frequent medical attention there; and

(7) the existence of a Utah court as an alternative forum does not on its own defeat personal jurisdiction. (ECF No. 20 at 17–18.)

Courts consider the following factors in determining the reasonableness of exercising jurisdiction:

> (1) the extent of the defendant['s] purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food*, 303 F.3d at 1114.

First, as established above, CIRCOR has purposefully directed its conduct to the forum state. Second, while the Court agrees there may be inconveniences for CIRCOR if this case were to continue in California, this factor is not dispositive. *Id.* at 1115. Third, Defendants do not argue about a potential conflict of sovereignty. (*See* ECF Nos. 19-1, 22.) Fourth, "California has a strong interest in providing a forum for its residents and citizens who are tortiously injured." *Dole Food*, 303 F.3d at 1115–16. Fifth, while Plaintiff's employment was in Utah and relevant witnesses and evidence may be there, "this factor is no longer weighed heavily given the modern advances in communication and transportation." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003) (internal quotation marks omitted). Sixth, the convenience of this forum is important to Plaintiff because he resides in El Dorado County and his wife requires frequent medical appointments in California. (*See* ECF No. 18 at 2–3.) Seventh, "while a [Utah] court may provide an alternative forum, this fact alone will not defeat this Court's exercise of personal jurisdiction." *Davis*, 2013 WL 2147468, at *8.

In consideration of the above factors, Defendants fail to show a compelling case that exercising jurisdiction over CIRCOR would be unreasonable. Accordingly, Defendants' motion to dismiss CIRCOR for lack of personal jurisdiction is DENIED.

///

///

B. <u>Motion to Dismiss for Failure to State a Claim</u>

Defendants move to dismiss the SAC under Rule 12(b)(6) on the basis Plaintiff failed to sufficiently allege a § 970 claim under Rule 9(b)'s heightened pleading standards.[3] (*See* ECF No. 19-1 at 17–22.)

*i.  California Labor Code § 970*

Section 970 prohibits a party from influencing, persuading, or engaging an individual to relocate and accept employment through knowingly false representations pertaining to:

> (a) The kind, character, or existence of such work;
>
> (b) The length of time such work will last, or the compensation therefor;
>
> (c) The sanitary or housing conditions relating to or surrounding the work;
>
> (d) The existence or nonexistence of any strike, lockout, or other labor dispute affecting it and pending between the proposed employer and the persons then or last engaged in the performance of the labor for which the employee is sought.

Cal. Lab. Code § 970; *see also White v. Smule, Inc.*, 75 Cal. App. 5th 346, 349 (2022).

A violation of § 970 is a fraud-based claim because it is a tort of deceit requiring a showing of scienter. *See Funk v. Sperry Corp.*, 842 F.2d 1129, 1133 (9th Cir. 1988). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires the plaintiff to allege "the who, what, when, where, and how" of the alleged fraudulent conduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

---

[3] In support of their argument, Defendants submit a Request for Judicial Notice pursuant to Federal Rule of Evidence 201(b) and the incorporation by reference doctrine, in which they seek judicial notice of the offer letter sent to Plaintiff. (ECF No. 19-3 at 2.) Plaintiff did not object to the Request. (*See* ECF No. 20.) In its prior Order, the Court accepted the document when reviewing Defendants' previous motion to dismiss. (ECF No. 17 at 12 n.3.) Finding Plaintiff sufficiently refers to the offer letter in his pleadings and does not dispute its authenticity, the Court hereby GRANTS Defendants' Request. (ECF No. 19-3); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Defendants also argue the statute of frauds bars Plaintiff's claim. (ECF No. 19-1 at 22.) Because the Court grants Defendants' Rule 12(b)(6) motion under Rule 9(b)'s heightened pleading standards, it need not and does not address Defendants' additional argument.

1097, 1106 (9th Cir. 2003). "In a fraud action against a corporation, a plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Dooms v. Fed. Home Loan Mortg. Corp.*, No. CV F 11-0352 LJO DLB, 2011 WL 1232989, at *14 (E.D. Cal. Mar. 31, 2011) (internal quotation omitted); *see also Renner v. Bluegreen Corp.*, No. EDCV 16-00239 JVS (KKx), 2016 WL 10835981, at *3 (C.D. Cal. Aug. 15, 2016). Rule 9(b) also requires the complaint "set forth an explanation as to why the statement or omission complained of was false or misleading." *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997). This requirement "can be satisfied by pointing to inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to the defendants." *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (internal quotation omitted).

*ii.     Analysis*

In its prior Order, the Court noted three shortcomings in Plaintiff's FAC: (1) Plaintiff failed to identify Olson and Lah as employees of Defendants; (2) Plaintiff failed to explain how the representations of the character, kind, or existence of his work were false or misleading; and (3) Plaintiff failed to explain how the representation about the anticipated length of employment was false or misleading at the time it was made. (ECF No. 17 at 14–15.) As explained above, Plaintiff rectified the first issue by alleging Lah and Olson worked for CIRCOR. Therefore, the Court will address whether Plaintiff has rectified the two other issues identified in its prior Order.

a.   <u>The Character, Kind, or Existence of Work</u>

As to the second issue, Defendants argue Plaintiff failed to plead facts that Defendants made knowingly false representations as to the kind, character, or existence of work. (ECF No. 19-1 at 19.) Plaintiff argues his allegations are sufficient because he alleges Olson and Lah described the position as full-time employment, Olson and Lah told Plaintiff they wanted him to move into a director's position, and Plaintiff was told he could travel for his wife's medical appointments — but none of these came to fruition. (ECF No. 20 at 20–21.)

The SAC fails to allege facts demonstrating Defendants' alleged statements were knowingly false. Plaintiff's offer letter states Plaintiff will be "Sr. Principle [sic] Project

14

Manager" and he is "entitled relocation benefits up to $75,000.00." (ECF No. 19-3 at 5.) There are no allegations Plaintiff was not in fact given this position, that the position was not full-time, or he was denied relocation benefits. (*See* ECF No. 18.)

As to the director position statement, Plaintiff alleges Olson and Lah said "they wanted [Plaintiff] to move into a director's position with Defendants." (*Id.* at 3.) Not only are no facts offered demonstrating Lah and Olson knew this statement was false when made (*see id.* at 3–5), but Plaintiff also specifically alleges moving him into a director position was something Olson and Lah "wanted" (*id.* at 3). Plaintiff's "wanted" allegation indicates Lah and Olson's director statement was an opinion, and thus, not a misrepresentation. *See Neu-Visions Sports, Inc. v. Soren*, 86 Cal. App. 4th 303, 308 (2000) ("[E]xpressions of opinion are not generally treated as representations of fact, and thus are not grounds for a misrepresentation cause of action."); *Indigo Grp. USA Inc v. Polo Ralph Lauren Corp.*, No. 2:11-cv-05883-JHN-CW, 2011 WL 13128301, at *3 (C.D. Cal. Oct. 25, 2011).

While Plaintiff alleges he was told he could travel for his wife's medical appointments as needed, there are no allegations Plaintiff was actually prohibited from doing so. (*See* ECF No. 18 at 3–6.) Instead, Plaintiff only alleges he was not given the ability to travel for his wife's medical appointments without issue. (*Id.* at 5.) Additionally, Plaintiff does not allege who made the representation that he could travel for his wife's medical appointments as needed. (*See id.* at 3.)

Plaintiff makes conclusory allegations that Defendants knew the alleged statements about full-time employment, the director position, and traveling for his wife's medical appointments were false at the time they were made without alleging any facts to support this conclusion. (*See id.* at 3–5.) Such conclusory statements do not meet the heightened pleading standards of Rule 9(b). *See UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1106 (C.D. Cal. 2015) ("Conclusory allegations are insufficient, and facts constituting the fraud must be alleged with specificity.").

### b. The Length of Time of Work

As to the third issue, Defendants argue Plaintiff has not alleged facts that Defendants made knowingly false representations as to the length of time of work. (ECF No. 19-1 at 21.)

1    Plaintiff argues his allegations are sufficient because he alleges Olson and Lah described the
2    position as an offer of employment with permanent relocation, Lah said he wanted Plaintiff to
3    work for Defendants until Plaintiff retired, and these representations were knowingly false.  (ECF
4    No. 20 at 20–21.)

5    While Plaintiff alleges the real reason for his termination was his association with his
6    wife's disability and his need to attend her medical appointments (ECF No. 18 at 5), Plaintiff fails
7    to allege facts *showing* his termination was pretextual and this was the real reason for his
8    termination, as opposed to making conclusory allegations that this was the case.  *See UMG*
9    *Recordings*, 117 F. Supp. 3d at 1106.

10   Although Plaintiff alleges Olson and Lah described his job offer as employment with
11   permanent relocation to Utah (ECF No. 18 at 3), this is contradicted by his judicially noticed and
12   incorporated by reference offer letter.  Unlike the permanent relocation allegation, the offer letter
13   states Plaintiff's employment would be "at will," and "[t]here is no expressed or implied contract
14   for any specific or definite period of employment."  (ECF No. 19-3 at 5.)  In ruling on a Rule
15   12(b)(6) motion, the Court "need not accept as true 'allegations that contradict matters properly
16   subject to judicial notice.'"  *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 812 (N.D.
17   Cal. 2020) (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).
18   Moreover, an offer of permanent employment is presumed an offer of at-will employment for an
19   indefinite term.  *Schubert v. Laird Techs., Inc.*, No. 09-3703 SC, 2009 WL 3429656, at *2 (N.D.
20   Cal. Oct. 22, 2009); *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 678 (1988).  Therefore, the
21   statement about Plaintiff's job offer having permanent relocation does not carry a representation
22   as to the length of Plaintiff's employment.

23   Plaintiff also alleges Lah said "he wanted [Plaintiff] to work for Defendants until he
24   retired."  (ECF No. 18 at 3.)  This is contradicted by the language of Plaintiff's offer letter stating
25   he would be employed on an at will basis and there was no contract for any specific or definite
26   period of employment.  (ECF No. 19-3 at 5.)  Moreover, Plaintiff specifically alleges this is
27   something Lah "wanted."  (ECF No. 18 at 3.)  Plaintiff's allegation indicates Lah's statement was
28   an opinion, and thus, not a misrepresentation.  *See Neu-Visions Sports*, 86 Cal. App. 4th at 308;

1  *Indigo Grp.*, 2011 WL 13128301, at *3.

2  Plaintiff asks the Court to infer that him working for Defendants until retirement was not
3  available when they made the job offer because only seven months elapsed between the start of
4  Plaintiff's employment and his termination. (ECF No. 20 at 21.) However, no such allegation
5  was made in his SAC. (*See* ECF No. 18.) It is inappropriate to assume Plaintiff "can prove facts
6  that [he] has not alleged or that the defendants have violated the . . . laws in ways that have not
7  been alleged." *Associated Gen. Contractors of Cal.*, 459 U.S. at 526. Therefore, the Court does
8  not make the requested inference solely because of temporal proximity. Even if such an
9  allegation had been made in the SAC, temporal proximity on its own is insufficient to satisfy Rule
10 9(b). *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 997 (9th Cir. 1999) (holding the temporal
11 proximity between an alleged misrepresentation and a contrary statement is insufficient on its
12 own to satisfy Rule 9(b)).

13 Plaintiff makes conclusory allegations that Defendants knew the alleged statements about
14 the length of time of the work were false at the time they were made without alleging any facts to
15 support this conclusion. (*See* ECF No. 18 at 3–5.) Such conclusory statements do not meet the
16 heightened pleading standards of Rule 9(b). *See UMG Recordings*, 117 F. Supp. 3d at 1106.

17 In sum, Plaintiff fails to state a claim for § 970 misrepresentation against Defendants.
18 Therefore, Defendants' Motion to Dismiss under Rule 12(b)(6) is GRANTED with leave to
19 amend.[4]

20 **IV.   CONCLUSION**

21 For the aforementioned reasons, the Court hereby GRANTS in part and DENIES in part
22 Defendants' Motion to Dismiss as follows:

23 1. Defendants' Motion to Dismiss under Rule 12(b)(2) is GRANTED as to
24    DELTAVALVE with leave to amend;

---

[4] While the Court noted in its March 31, 2021 Order that Plaintiff had one final opportunity to amend his factual allegations (ECF No. 17 at 15), the Court is cognizant of the fact that Plaintiff only alleges a single cause of action, and therefore dismissal of the cause of action without leave to amend would result in the closure of Plaintiff's case. Therefore, the Court is giving Plaintiff an additional opportunity to amend to cure the deficiencies in the SAC.

2. Defendants' Motion to Dismiss under Rule 12(b)(2) is DENIED as to CIRCOR; and

3. Defendants' Motion to Dismiss under Rule 12(b)(6) is GRANTED with leave to amend.

Plaintiff may file a third amended complaint within thirty (30) days of the electronic filing date of this Order. Defendants' responsive pleading is due within twenty-one (21) days of the electronic filing date of Plaintiff's third amended complaint.

IT IS SO ORDERED.

**DATED: September 14, 2022**

Troy L. Nunley
United States District Judge